**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JOSHUA HICKS, individually and as parent and natural guardian of K.H.1, K.H.2, and K.H.3, minor children; REBECCA COLLIER, individually and as parent and natural guardian of J.C., minor child; EMILY COLLIER; STEVEN COLLIER; DIANA WING; FRANCES VIGIL; EDWARD VIGIL; TERRI WISNIEWSKI; CANDACE MARTINEZ; KAREN MARTINEZ; JONATHAN MARTINEZ; CANDACE AVINA MARTINEZ, individually and as parent and natural guardian of I.A. and T.A., minor children; ROBERT NEUZIL; ELLENLORE WICK; JOHN WICK; LEI-LANI BARELA, individually and as parent and natural guardian of N.B. and I.B., minor children; ADAM BARELA; ONEIL LAVASSEUR; MARIE LAVASSEUR; MARK TRUJILLO, individually and as parent and natural guardian of K.T., minor child; CAROL OCHOA; BARBARA NEWSOM; DEREK SUSA;LINDA HARGIS; GREGORY A NICHOLS; GILFORD SORENS; BENJAMIN FRAHM; JENNIFER JINKINS, individually and as parent and natural guardian of T.Y. and X.J., minor children; THERESA MARTINEZ; BURTON EVANS; KELSEY PATSKY, individually and as parent and natural guardian of I.P., minor child; GARY YOUTZ; SUSAN LEARNED; WAYNE MAZARI; HAROLD BATES; GEORGIA BATES; JACQUELINE CZOSNYKA; ROBERT CZOSNYKA; MAXINE HANLINE; LAWRENCE MARTINEZ; BOBBY TOMLIN; CAROLYN PARKER; TERRY ROWLAND, individually and as parent and natural guardian of C.R., minor child; KIMBERLY ROWLAND; POK

ROWLAND; ABBY VANHOUTEN; JAMES VANHOUTEN; CHRIS FINDLAY, individually and as parent and natural guardian of M.F. and J.F., minor children; ASHLEY FINDLAY; APRIL COWLEY, individually and as parent and natural guardian of A.C.1, A.C.2, J.C, and E.C., minor children; SCOTT MATHISON; BRUCE GERSHMEL; LEONARDO MAY; CARRIE GORDON; JACOB DUNTON; HAROLD HITT; CHEVON PATRICK, individually and as parent and natural guardian of K.P., minor child; REGINA HULL, individually and as parent and natural guardian of A.R., V.R., and N.R., minor children; DAWN HARRIS; ROBERT SAUERBREY; DAVID MONDRAGON, SR.; TONY KORTE; KRISTIE BARNES, individually and as parent and natural guardian of R.E., minor child; DORTHY LASTER; JOHN CRYSTER; COLIN QUINN; SCOTT GASTER; CARL BRICKELL, individually and as parent and natural guardian of C.B., minor child; DEAN CIMINO; SHURMAN GARDNER; JOSHUA PIERCE; LAFAYETTE BRADY; LUCAS MARTINEZ; PETRA HIGGS; ANNA HIGGS; EVELYN DAVILA, individually and as parent and natural guardian of I.D. and A.W., minor children; REBECCA WILSON, individually and as parent and natural guardian of A.W., minor child; LEONA HANSEN; THOMAS HANSEN; SHELLY FLY; MATTHEW ERICKSON, individually and as parent and natural guardian of U.E. and C.E., minor children; NATALIA ERICKSON, individually and as parent and natural guardian of J.H., minor child; JESSIE MARTIN; RONALD WHEELER; WILLIE GIBBONS; RANDI LUCERO; JULIA CRAIG; FRANK CRAIG; LINDA CRAIG; DONALD BOWMAN, JR.; APRIL BOWMAN; MICHELLE ROMERO; TROY ROMERO;

CARON VONSPRECKEN; RICKY VONSPRECKEN; LAURA SCOTT; AVERY SCOTT; DEBRAY SCOTT; CYNTHIA GRIFFIN; UN SUK DUFRAIN; ALEXANDER YU; NICOLE LORENZANA, individually and as parent and natural guardian of N.W., minor child; BRITTNEY HAMILTON; RANDALL HAMILTON; ALEJANDRO FRANCO; DOMINICK ANDERSON; NICOLE ANDERSON; JACKY ANDERSON; SYLVIA SMITH, individually and as parent and natural guardian of T.G., minor child; MARQUAL LAMBERT; EMARI LAMBERT; ARLENE LAMBERT; ANTOINE LAMBERT; DAVID MONTOYA; RICKY TWEED; DORA FERNANDEZ, individually and as parent and natural guardian of M.N., minor child; CANDACE KURTH; VICTORIA GOODELL; MICHAEL ROTONDO; CHRIS PANDOLFI, individually and as parent and natural guardian of N.P., A.P., J.P., C.P., and P.P., minor children; SHANELL THOMPSON, individually and as parent and natural guardian of A.T., minor child; AMY CLEMENTS; TINA KIESELSTEIN; JEROME DEPNER, individually and as parent and natural guardian of I.D., minor child; CHRISTOPHER VARANO, individually and as parent and natural guardian of D.V., minor child; HEATHER VARANO; CHRISTOPHER VARANO; MICAHEL ENDRES; JENNIFER OSBORN; GLENDA LUX; DAVID LUX; SILVIA VIGIL; DONALD VIGIL; JULIAN SOLIZ, individually and as parent and natural guardian of L.S., minor child; CATHY JOHNSON; MARJORIE TUGGLE; JAMES TUGGLE; CASSANDRA GORDON; TOMMY BARTER; CHONG FRAZIER; TIMOTHY SCOTT; ROWENA SCOTT; MARTHA TAYLOR; ROBERT CHRISTIAN; DANIEL

HAMILTON; EVA HAMILTON; NORMA VAN BUSKIRK; ROBERT CROFT; JUDY CAMPBELL; KEVIN BOYD; CHRISTINE UEBEL; CRISTINA PEREZ-GIORDANO, individually and as parent and natural guardian of A.G., R.G. and N.G., minor children; JEREMY GIORDANO; SHY-ANNE GRAMSCH; ROBYN PALMER; CHERI STRAHAN; WILFRED BERTHIAUME; ELEONORE BERTHIAUME; RAYMOND PHELPS; HEATHER LINDBLAD, individually and as parent and natural guardian of C.P., minor child; THOMAS CHISHOLM, individually and as parent and natural guardian of F.C. and B.C., minor children; WARREN PICKEREL; KRISTIE VALENTINO; BRYCE JASKAR; SKYE JASKAR; and PROVIDENCE JASKAR,

*Plaintiffs*,

v.

THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing, Co.; TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY; BUCKEYE FIRE EQUIPMENT CO.; CHEMGUARD; NATIONAL FOAM, INC.; KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOAM, INC., f/k/a NATIONAL FOAM, INC., individually and as successor in interest to NATIONAL FOAM, INC.; KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., individually and as successor in interest to NATIONAL FOAM, INC.; KIDDE-FENWAL, INC., individually and as successor in interest to NATIONAL FOAM, INC.; and UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC., individually and as successor in interest to NATIONAL FOAM, INC.;

*Defendants.*

**COMPLAINT AND JURY DEMAND**

Plaintiffs, by and through their undersigned counsel, hereby file this Complaint and Jury Demand ("Complaint") against Defendants, THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing, Co.; TYCO FIRE PRODUCTS L.P.; successor in interest to THE ANSUL COMPANY; BUCKEYE FIRE PROTECTION CO.; CHEMGAURD; NATIONAL FOAM, INC.; KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOA, INC.; KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., individually and as a successor in interest to NATIONAL FOAM, INC.; KIDDE-FENWAL, INC., individually and as a successor in interest to NATIONAL FOAM, INC.; and UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC.; (collectively "Defendants"). Plaintiffs assert personal injury and/or property damage as a result of the contamination of the drinking water supply serving the Cities of Security, Widefield, and parts of Colorado Springs, and complain and allege on personal knowledge as to themselves, and on information and belief as to all other matters, as follows:

**<u>INTRODUCTION</u>**

1. The communities of Fountain, Security, Widefield, parts of Colorado Springs (collectively the "Communities") are all located in El Paso County, Colorado. This complaint is a related action to *Bell, et al., v. The 3M Company, et al.*, 16-cv-2351-RBJ.

2. The Communities are located in close proximity to and downgradient of Peterson Air Force Base and the Colorado Springs Municipal Airport, which share one property.

3. The United States Air Force ("USAF") provided firefighting services to the Colorado Springs Municipal Airport, owned by the City of Colorado Springs through a joint use

agreement. For purposes of this Complaint, the property of Peterson Air Force Base shall include the property of the Colorado Springs Municipal Airport and shall collectively be referred to as "PAFB."

4. Residents of the Communities receive their potable water either from private wells or from their municipal water provider.

5. The Communities receive municipal drinking water from the City of Fountain Utilities Department, the Security Water and Sanitation District, and the Widefield Water and Sanitation District.

6. The Security Water and Sanitation District provides drinking water to approximately 19,000 residential and business customers.

7. The City of Fountain Utilities Department provides drinking water to approximately 29,000 residential and business customers.

8. The Widefield Water and Sanitation District provides drinking water to approximately 16,000 residential and business customers.

9. On May 2, 2012, the United States Environmental Protection Agency ("USEPA") published its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), requiring public water systems nationwide to monitor for thirty (30) contaminants of concern between 2013 and 2015.

10. As part of the UCMR3, public water systems are required to sample for six perfluorinated compounds ("PFCs"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").

11. In October 2015, the USEPA released results from UCMR3 that indicated the Communities' water supplies were contaminated with PFOA and PFOS.

12. Prior to the disclosure of the UCMR3 data, there was no notification to the residents of the Communities that the water was contaminated with PFOA and PFOS.

13. In May 2016, the USEPA established a drinking water health advisory level for PFOA and PFOS and warned that lifetime exposure to PFOA and PFOS over 70 parts per trillion ("ppt") was linked to the development of numerous serious medical conditions.

14. In response to the USEPA's establishment of the 70 ppt health advisory level, the Communities' municipal water providers notified the residents in the Communities of the contamination and took action to reduce the PFOA and PFOS levels in the drinking water, including shutting down wells, obtaining and/or purchasing alternative sources of water, and blending clean water with the contaminated water to lower the PFC level in their customers' water.

15. It was in this same month that Plaintiffs were first made aware that their drinking water was contaminated with PFCs at hazardous levels and were advised to seek alternate drinking water supplies.

16. Among the 63 areas nationwide where the USEPA found PFOA and PFOS exceeding the 70 ppt limit, federal data shows that the Communities exhibit some of the highest levels of contamination.[1]

17. By this time, local newspapers were reporting that federal data showed that the water in all 32 of the Security Water and Sanitation District's municipal wells exhibited PFC

---

[1] Bruce Finley, *Drinking water in three Colorado cities contaminated with toxic chemicals above EPA limits*, DENVER POST, (June 15, 2016 4:08 PM), http://www.denverpost.com/2016/06/15/colorado-widefield-fountain-security-water-chemicals-toxic-epa/.

contamination at levels exceeding the EPA health advisory limit of 70 ppt. At one well, PFC concentration reached 1,370 ppt, nearly 20 times in excess of the EPA health advisory.[2]

18. EPA officials recommended that pregnant women and small children should not drink local water serving the Communities.[3]

19. Subsequent investigations into the contamination were carried out by the United States Army Corps of Engineers on behalf of the USAF and the Colorado Department of Public Health & Environment ("CDPHE") and have uncovered widespread PFC contamination of the groundwater resources for the Communities.[4]

20. These investigations also concluded that the basis for this widespread contamination of the Communities' ground water is decades of use, storage, and disposal of aqueous film-forming foam ("AFFF") at PAFB that contained PFOA and PFOS.

21. The CDPHE horizontally delineated the PFC plumes, designating these plumes as "Areas of Investigation" ("CDPHE Areas of Investigation").

22. Defendants manufactured, sold, and distributed AFFF to PAFB despite their awareness that the inclusion of PFOA and PFOS in AFFF presented an unreasonable risk to human health and the environment and was inherently dangerous.

23. The Defendants also knew that both PFOA and PFOS were highly soluble and mobile in water, highly likely to contaminate water supplies, highly persistent in the environment, and known to bio-accumulate in humans and contribute to the development of

---

[2] *Id.*
[3] *Id.*

[4] Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado, U.S. Army Corps of Engineers (November 2016), http://www.peterson.af.mil/Portals/15/documents/Public%20Notices/552503_Revised%20Final%20Peterson%20AFB%20PA_11_2016.pdf?ver=2017-05-16-162140-693.

numerous serious health conditions, especially for sensitive receptors such as young children and pregnant and nursing women.

24. The Defendants marketed and sold their products with knowledge that the USAF and PAFB would use large quantities of AFFF containing PFOA and PFOS in training operations and in emergency fire-fighting situations in such a manner that PFOA and PFOS would contaminate the air, soil, and groundwater.

25. The Defendants marketed and sold their products with knowledge that large quantities of AFFF containing PFOA and PFOS would be stored in fire suppressant systems and tanks on USAF Bases and at airports, including PAFB, and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the air, soil, and groundwater.

26. The Defendants failed in their duty to manufacture a product that would not cause widespread harm and in their duty to warn the United States Department of Defense ("DOD"), the USAF, PAFB, the municipal water providers, and the residents in the surrounding Communities of the inherently dangerous properties of their AFFF products.

27. There are over 64,000 residents of the Communities who were exposed to PFOA and PFOS contaminated drinking water from the City of Fountain, the Security Water and Sanitation District, the Widefield Water and Sanitation District, and private wells, all of which obtain groundwater from the CDPHE Areas of Investigation.

28. The Plaintiffs in this complaint are all residents of the cities of Security, Widefield, and of Colorado Springs, Colorado.

**Health Effects of PFOS and PFOA Exposure**

29. Many parties have studied PFOA and PFOS and have concluded that exposure to PFOA and PFOS is associated with the development of numerous serious medical conditions.

30. PFOA, sometimes identified as C8 due to the common presence of eight carbons in the PFOA molecule, was the subject of a study formed out of a class action settlement arising out of water contamination from DuPont's Washington Works located in Wood County, West Virginia.

31. The C8 Science Panel consisted of three epidemiologists specifically tasked with determining whether there was a link between PFOA exposure and human diseases.

32. In 2012, the Panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

33. In May 2015, based on concerns about the production and release of PFOA into the environment, scientists and other professionals from a variety of disciplines issued the "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)," a policy statement calling for greater regulation, restrictions, and limits on the manufacture and handling of any PFOA containing product, as well as the development of safe, non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.

34. In May 2016, the USEPA issued Lifetime Health Advisories advising against lifetime PFOA and PFOS exposure above 70 ppt.

35. The USEPA's 70 ppt limit is designed to protect the population at large from exposure to harmful concentrations of PFOA and PFOS in drinking water above which adverse health effects are anticipated to occur.

36. According to the USEPA Lifetime Health Advisory, the non-cancer adverse health effects observed following exposure to PFOS are the same as those observed with PFOA.

37. Many states, however, have issued lower regulatory limits. For example, Vermont has set a combined level of 20 ppt for PFOA and PFOS and New Jersey has set a maximum contaminant level of 14 ppt for PFOA.

38. On November 10, 2017, California listed PFOA and PFOS as chemicals known to the state to cause reproductive toxicity, pursuant to Proposition 65, The Safe Drinking Water and Toxic Enforcement Act of 1986.

39. Colorado currently follows the USEPA Lifetime Health Advisory level of 70 ppt for combined lifetime exposure to PFOA and PFOS.

40. The CDPHE has acknowledged that the link between PFOA and PFOS exposure and developmental effects has been strengthening, including low birth weight and accelerated puberty. It has also acknowledged that some human studies show that increased exposure may increase the risk for changes in blood cholesterol, liver enzymes, and uric acid levels, which may be linked with an elevated risk of heart disease, liver disease or high blood pressure.[5]

**PLAINTIFF'S EXPOSURE AND DAMAGES**

41. Years of ingestion and dermal absorption of contaminated water from the Fountain, Security, and Widefield water districts have exposed unknowing residents of the Communities to PFCs at concentrations hazardous to their health.

42. Plaintiffs have been injured as a result of receiving water with elevated levels of PFCs, including PFOA and PFOS.

[5] https://www.colorado.gov/pacific/cdphe/PFCs/health/advisory. (Last visited 4/11/18).

43. Plaintiffs have suffered exposure, bioaccumulation of PFCs in their blood, personal injury, property damage, and the diminution of property values due to PFC contamination of the municipal and private water supplies caused by Defendants' manufacture, distribution, and sale of AFFF.

44. The properties of the Plaintiffs have been damaged due to the presence of PFCs in their homes, soil, surrounding property, and potable water supply.

45. Plaintiffs seek recovery from all Defendants for injuries, damages, and losses suffered by the Plaintiffs, each of whom suffered injuries as a direct and proximate result of exposure to and consumption of PFC-contaminated water from the municipal and private drinking water supplies, in an amount to be determined at trial, exclusive of interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

46. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1) in that this action is between citizens of different States.

47. This Court has jurisdiction over Defendants pursuant to C.R.S.§ 13-1-124.

48. "Pursuant to 28 U.S.C. § 1332, a federal district court possesses original subject matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). The value of the case exceeds the jurisdictional threshold value of $75,000.00, exclusive of all interest and costs, taking into account the nature and extent of the injuries and damages sustained by each individual Plaintiff, and the reasonable economic and non-economic injuries and damages sustained by each individual Plaintiff."

49. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District of Colorado and caused harm to Plaintiffs, all of whom reside in this District.

## PARTIES

50. Plaintiff Joshua Hicks, individually and as parent and natural guardian of K.H.1, currently resides at 2318 Cactus Drive, Colorado Springs, CO 80911 with minor child K.H.1. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Joshua Hicks and K.H. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

51. Plaintiff Joshua Hicks, individually and as parent and natural guardian of K.H.2, currently resides at 2318 Cactus Drive, Colorado Springs, CO 80911 with minor child K.H.2. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Joshua Hicks and K.H. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

52. Plaintiff Joshua Hicks, individually and as parent and natural guardian of K.H.3, currently resides at 2318 Cactus Drive, Colorado Springs, CO 80911 with minor child K.H.3. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Joshua Hicks and K.H. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

53. Plaintiff Rebecca Collier, individually and as parent and natural guardian of J.C., currently resides at 235 Hooper Ct, Colorado Springs, CO 80911 with minor child J.C. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Rebecca Collier and J.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

54. Plaintiff Emily Collier currently owns and resides at 235 Hooper Ct, Colorado Springs, CO 80911. As a result of Emily Collier’s exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Emily Collier has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

55. Plaintiff Rebecca Collier currently owns and resides at 235 Hooper Ct, Colorado Springs, CO 80911. As a result of Rebecca Collier's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Rebecca Collier has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

56. Plaintiff Steven Collier currently owns and resides at 235 Hooper Ct, Colorado Springs, CO 80911. As a result of Steven Collier's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Steven Collier has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

57. Plaintiff Diana Wing currently owns and resides at 237 Everett Dr, Colorado Springs, CO 80911. As a result of Diana Wing's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Diana Wing has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

58. Plaintiff Frances Vigil currently owns and resides at 24 North Amherst Street, Colorado Springs, CO 80911. As a result of Frances Vigil's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Frances Vigil has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

59. Plaintiff Edward Vigil currently owns and resides at 24 North Amherst Street, Colorado Springs, CO 80911. As a result of Edward Vigil's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Edward Vigil has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

60. Plaintiff Terri Wisniewski currently owns and resides at 2400 Cody Dr, Colorado

Springs, CO 80911. As a result of Terri Wisniewski's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Terri Wisniewski has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

61. Plaintiff Candace Martinez currently owns and resides at 243 N Vine St, Fountain, CO 80817. As a result of Candace Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Candace Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

62. Plaintiff Karen Martinez currently owns and resides at 243 N Vine St, Fountain, CO 80817. As a result of Karen Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Karen Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

63. Plaintiff Jonathan Martinez currently owns and resides at 243 N Vine St, Fountain, CO 80817. As a result of Jonathan Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jonathan Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

64. Plaintiff Candace Avina Martinez, individually and as parent and natural guardian of I.A., currently resides at 243 North Vine Street, Fountain, CO 80817 with minor child I.A. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Candace Avina Martinez and I.A. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

65. Plaintiff Candace Avina Martinez, individually and as parent and natural guardian of T.A., currently resides at 243 North Vine Street, Fountain, CO 80817 with minor child T.A. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking

water supply, Candace Avina Martinez and T.A. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

66. Plaintiff Robert Neuzil currently owns and resides at 245 Peck Court, Colorado Springs, CO 80911. As a result of Robert Neuzil's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Neuzil has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

67. Plaintiff Ellenlore Wick currently owns and resides at 2502 Frontier Drive, Colorado Springs, CO 80911. As a result of Ellenlore Wick's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ellenlore Wick has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

68. Plaintiff John Wick currently owns and resides at 2502 Frontier Drive, Colorado Springs, CO 80911. As a result of John Wick's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, John Wick has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

69. Plaintiff Lei-Lani Barela, individually and as parent and natural guardian of N.B., currently resides at 2510 Ivanhoe Drive, Colorado Springs, CO 80911 with minor child N.B. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lei-Lani Barela and N.B. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

70. Plaintiff Lei-Lani Barela, individually and as parent and natural guardian of I.B., currently resides at 2510 Ivanhoe Drive, Colorado Springs, CO 80911 with minor child I.B. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lei-Lani Barela and I.B. have elevated levels of PFOA, PFOS, and/or PFCs in their

blood.

71. Plaintiff Lei-Lani Barela currently owns and resides at 2510 Ivanhoe Drive, Colorado Springs, CO 80911. As a result of Lei-Lani Barela's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lei-Lani Barela has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

72. Plaintiff Adam Barela currently owns and resides at 2510 Ivnahoe Drive, Colorado Springs, CO 80911. As a result of Adam Barela's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Adam Barela has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

73. Plaintiff Oneil Lavasseur currently owns and resides at 252 Harvard St, Colorado Springs, CO 80911. As a result of Oneil Lavasseur's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Oneil Lavasseur has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

74. Plaintiff Marie Lavasseur currently owns and resides at 252 Harvard St, Colorado Springs, CO 80911. As a result of Marie Lavasseur's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marie Lavasseur has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

75. Plaintiff Mark Trujillo, individually and as parent and natural guardian of K.T., currently resides at 253 N. Vine St., Apt. 1, Fountain, CO 80817 with minor child K.T. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Mark Trujillo and K.T. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

76. Plaintiff Carol Ochoa currently owns and resides at 257 Corliss Street, Colorado Springs, CO 80911. As a result of Carol Ochoa's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Carol Ochoa has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

77. Plaintiff Barbara Newsom currently owns and resides at 26 Willis Dr, Colorado Springs, CO 80911. As a result of Barbara Newsom's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Barbara Newsom has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

78. Plaintiff Derek Susa currently owns and resides at 2614 Willard Dr, Colorado Springs, CO 80911. As a result of Derek Susa's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Derek Susa has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

79. Plaintiff Linda Hargis currently owns and resides at 27 N Ely Street, Colorado Springs, CO 80911. As a result of Linda Hargis's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Linda Hargis has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

80. Plaintiff Gregory A Nichols currently owns and resides at 285 Peck Court, Colorado Springs, CO 80911. As a result of Gregory A Nichols's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Gregory A Nichols has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

81. Plaintiff Gilford Sorens currently owns and resides at 29 North Dartmouth St, Colorado Springs, CO 80911. As a result of Gilford Sorens's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Gilford Sorens has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

82. Plaintiff Benjamin Frahm currently owns and resides at 295 Lanfare Place,

Colorado Springs, CO 80911. As a result of Benjamin Frahm's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Benjamin Frahm has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

83. Plaintiff Jennifer Jinkins, individually and as parent and natural guardian of T.Y., currently resides at 301 Rose Dr, Colorado Springs, CO 80911 with minor child T.Y. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jennifer Jinkins and T.Y. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

84. Plaintiff Jennifer Jinkins, individually and as parent and natural guardian of X.J., currently resides at 301 Rose Drive, Colorado Springs, CO 80911 with minor child X.J. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jennifer Jinkins and X.J. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

85. Plaintiff Jennifer Jinkins currently owns and resides at 301 Rose Drive, Colorado Springs, CO 80911. As a result of Jennifer Jinkins's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jennifer Jinkins has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

86. Plaintiff Theresa Martinez currently owns and resides at 304 East Missouri Ave, Fountain, CO 80817. As a result of Theresa Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Theresa Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

87. Plaintiff Burton Evans currently owns and resides at 306 Fairfax St, Colorado Springs, CO 80911. As a result of Burton Evans's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Burton Evans has elevated levels of PFOA, PFOS,

and/or PFCs in plaintiff's blood.

88. Plaintiff Kelsey Patsky, individually and as parent and natural guardian of I.P., currently resides at 308 Doris Drive, Colorado Springs, CO 80911 with minor child I.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kelsey Patsky and I.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Kelsey Patsky has been diagnosed with Pregnancy Problems.

89. Plaintiff Gary Youtz currently owns and resides at 311 Fairfax Street, Colorado Springs, CO 80911. As a result of Gary Youtz's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Gary Youtz has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

90. Plaintiff Susan Learned currently owns and resides at 313 Kiva Rd, Colorado Springs, CO 80911. As a result of Susan Learned's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Susan Learned has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

91. Plaintiff Wayne Mazari currently owns and resides at 313 Morningside Drive, Colorado Springs, CO 80911. As a result of Wayne Mazari's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Wayne Mazari has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

92. Plaintiff Harold Bates currently owns and resides at 314 Quebec Street, Colorado Springs, CO 80911. As a result of Harold Bates's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Harold Bates has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

93. Plaintiff Georgia Bates currently owns and resides at 314 Quebec Street, Colorado

Springs, CO 80911. As a result of Georgia Bates's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Georgia Bates has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

94. Plaintiff Jacqueline Czosnyka currently owns and resides at 316 Morningside Drive, Colorado Springs, CO 80911. As a result of Jacqueline Czosnyka's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jacqueline Czosnyka has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

95. Plaintiff Robert Czosnyka currently owns and resides at 316 Morningside Drive, Colorado Springs, CO 80911. As a result of Robert Czosnyka's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Czosnyka has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

96. Plaintiff Maxine Hanline currently owns and resides at 320 Everett Dr, Colorado Springs, CO 80911. As a result of Maxine Hanline's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Maxine Hanline has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

97. Plaintiff Lawrence Martinez currently owns and resides at 322 Cumming Avenue, Fountain, CO 80817. As a result of Lawrence Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lawrence Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

98. Plaintiff Bobby Tomlin currently owns and resides at 322 Fairfax Street, Colorado Springs, CO 80911. As a result of Bobby Tomlin's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Bobby Tomlin has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

99. Plaintiff Carolyn Parker currently owns and resides at 322 Iris Dr., Fountain, CO 80817. As a result of Carolyn Parker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Carolyn Parker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

100. Plaintiff Terry Rowland, individually and as parent and natural guardian of C.R., currently resides at 340 Wallbrach Way, Fountain, CO 80817 with minor child C.R. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Terry Rowland and C.R. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

101. Plaintiff Kimberly Rowland currently owns and resides at 340 Wallbrach Way, Fountain, CO 80817. As a result of Kimberly Rowland's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kimberly Rowland has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

102. Plaintiff Terry Rowland currently owns and resides at 340 Wallbrach Way, Fountain, CO 80817. As a result of Terry Rowland's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Terry Rowland has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

103. Plaintiff Pok Rowland currently owns and resides at 340 Wallbrach Way, Fountain, CO 80817. As a result of Pok Rowland's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Pok Rowland has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

104. Plaintiff Abby VanHouten currently owns and resides at 341 Walbrach Way, Fountain, CO 80817. As a result of Abby VanHouten's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Abby VanHouten has elevated levels of PFOA,

PFOS, and/or PFCs in plaintiff's blood.

105. Plaintiff James VanHouten currently owns and resides at 341 Walbrach Way, Fountain, CO 80817. As a result of James VanHouten's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, James VanHouten has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

106. Plaintiff Chris Findlay, individually and as parent and natural guardian of M.F., currently resides at 3483 Spitfire Dr, Colorado Springs, CO 80911 with minor child M.F. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Findlay and M.F. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Chris Findlay has been diagnosed with High Cholesterol.

107. Plaintiff Chris Findlay, individually and as parent and natural guardian of J.F., currently resides at 3483 Spitfire Dr, Colorado Springs, CO 80911 with minor child J.F. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Findlay and J.F. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Chris Findlay has been diagnosed with High Cholesterol.

108. Plaintiff Ashley Findlay currently owns and resides at 3483 Spitfire Dr., Colorado Springs, CO 80911. As a result of Ashley Findlay's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ashley Findlay has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

109. Plaintiff April Cowley, individually and as parent and natural guardian of A.C.1, currently resides at 353 East Stanley Drive, Pueblo, CO 81007 with minor child A.C.1. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, April Cowley and A.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

110. Plaintiff April Cowley, individually and as parent and natural guardian of A.C.2, currently resides at 353 East Stanley Drive, Pueblo, CO 81007 with minor child A.C.2. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, April Cowley and A.C.3. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

111. Plaintiff April Cowley, individually and as parent and natural guardian of J.C., currently resides at 353 East Stanley Drive, Pueblo, CO 81007 with minor child J.C. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, April Cowley and J.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

112. Plaintiff April Cowley, individually and as parent and natural guardian of E.C., currently resides at 353 East Stanley Drive, Pueblo, CO 81007 with minor child E.C. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, April Cowley and E.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

113. Plaintiff Scott Mathison currently owns and resides at 3620 East Cresta Loma Circle, Colorado Springs, CO 80911. As a result of Scott Mathison's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Scott Mathison has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

114. Plaintiff Bruce Gershmel currently owns and resides at 365 Pucket Circle, Colorado Springs, CO 80911. As a result of Bruce Gershmel's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Bruce Gershmel has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

115. Plaintiff Leonardo May currently owns and resides at 3660 Dessert Willow Lane, Colorado Springs, CO 80925. As a result of Leonardo May's exposure to elevated levels of

PFOA, PFOS, and/or PFCs in the drinking water supply, Leonardo May has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

116. Plaintiff Carrie Gordon currently owns and resides at 3690 W Cresta Loma Circle, Colorado Springs, CO 80911. As a result of Carrie Gordon's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Carrie Gordon has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

117. Plaintiff Jacob Dunton currently owns and resides at 3807 Shining Star Drive, Colorado Springs, CO 80925. As a result of Jacob Dunton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jacob Dunton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

118. Plaintiff Harold Hitt currently owns and resides at 3825 East Cresta Loma Circle, Colorado Springs, CO 80911. As a result of Harold Hitt's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Harold Hitt had elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

119. Plaintiff Chevon Patrick, individually and as parent and natural guardian of K.P., currently resides at 3915 Sinnes Lane, Colorado Springs, CO 80911 with minor child K.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chevon Patrick and K.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

120. Plaintiff Chevon Patrick currently owns and resides at 3915 Sinnes Lane, Colorado Springs, CO 80911. As a result of Chevon Patrick's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chevon Patrick has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

121. Plaintiff Regina Hull currently owns and resides at 3925 Cooke Dr, Colorado Springs, CO 80911. As a result of Regina Hull's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Regina Hull has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

122. Plaintiff Regina Hull, individually and as parent and natural guardian of A.R., currently resides at 3925 Cooke Drive, Colorado Springs, CO 80911 with minor child A.R. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Regina Hull and A.R. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

123. Plaintiff Regina Hull, individually and as parent and natural guardian of V.R., currently resides at 3925 Cooke Drive, Colorado Springs, CO 80911 with minor child V.R. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Regina Hull and V.R. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

124. Plaintiff Regina Hull, individually and as parent and natural guardian of N.R., currently resides at 3925 Cooke Drive, Colorado Springs, CO 80911 with minor child N.R. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Regina Hull and N.R. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

125. Plaintiff Dawn Harris currently owns and resides at 3940 Remple Court, Colorado Springs, CO 80911. As a result of Dawn Harris's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dawn Harris has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

126. Plaintiff Robert Sauerbrey currently owns and resides at 3950 Cooke Drive, Colorado Springs, CO 80911. As a result of Robert Sauerbrey's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Sauerbrey has elevated levels of

PFOA, PFOS, and/or PFCs in plaintiff's blood.

127. Plaintiff David Mondragon, Sr. currently owns and resides at 3968 Sleepy Creek Dr, Colorado Springs, CO 80925. As a result of David Mondragon, Sr.'s exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, David Mondragon, Sr. has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

128. Plaintiff Tony Korte currently owns and resides at 3970 Clear View Frontage Rd, Colorado Springs, CO 80911. As a result of Tony Korte's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Tony Korte has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

129. Plaintiff Kristie Barnes, individually and as parent and natural guardian of R.E., currently resides at 40 Monk Street, Colorado Springs, CO 80911 with minor child R.E. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kristie Barnes and R.E. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

130. Plaintiff Dorthy Laster currently owns and resides at 401 Kiva Rd., Colorado Springs, CO 80911. As a result of Dorthy Laster's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dorthy Laster has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

131. Plaintiff John Cryster currently owns and resides at 4010 Cantrell Drive, Colorado Springs, CO 80911. As a result of John Cryster's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, John Cryster has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

132. Plaintiff Colin Quinn currently lives at 1421 Overland Drive, Springhill, FL

34608. Plaintiff Colin Quinn lived at 9404 Tranquil Morning Terrace, Colorado Springs, CO 80925 and 4020 Sleepy Creek Dr, Colorado Springs, CO 80925 for all times relevant herein. As a result of Colin Quinn's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Colin Quinn has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

133. Plaintiff Scott Gaster currently owns and resides at 4035 Allgood Drive, Colorado Springs, CO 80911. As a result of Scott Gaster's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Scott Gaster has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

134. Plaintiff Carl Brickell, individually and as parent and natural guardian of C.B., currently resides at 4040 Chenango Drive, Colorado Springs, CO 80911 with minor child C.B. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Carl Brickell and C.B. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

135. Plaintiff Carl Bricknell currently owns and resides at 4040 Chenango Drive, Colorado Springs, CO 80911. As a result of Carl Bricknell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Carl Bricknell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

136. Plaintiff Dean Cimino currently owns and resides at 405 N El Paso St, Fountain, CO 80817. As a result of Dean Cimino's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dean Cimino has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

137. Plaintiff Shurman Gardner currently owns and resides at 408 Crest Street,

Fountain, CO 80817. As a result of Shurman Gardner's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Shurman Gardner has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

138. Plaintiff Joshua Pierce currently owns and resides at 41 Monk Street, Colorado Springs, CO 80911. As a result of Joshua Pierce's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Joshua Pierce has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

139. Plaintiff Lafayette Brady currently owns and resides at 4140 Chenango Drive, Colorado Springs, CO 80911. As a result of Lafayette Brady's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lafayette Brady has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

140. Plaintiff Lucas Martinez currently owns and resides at 415 Niagara Street, Colorado Springs, CO 80911. As a result of Lucas Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lucas Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

141. Plaintiff Petra Higgs currently owns and resides at 415 Squire Ct, Colorado Springs, CO 80911. As a result of Petra Higgs's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Petra Higgs has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

142. Plaintiff Anna Higgs currently owns and resides at 415 Squire Ct., Colorado Springs, CO 80911. As a result of Anna Higgs's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Anna Higgs has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

143. Plaintiff Evelyn Davila currently owns and resides at 4170 Chenango Dr, Colorado Springs, CO 80911. As a result of Evelyn Davila's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Evelyn Davila has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

144. Plaintiff Evelyn Davila, individually and as parent and natural guardian of I.D., currently resides at 4170 Chenango Drive, Colorado Springs, CO 80911 with minor child I.D. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Evelyn Davila and I.D. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

145. Plaintiff Rebecca Wilson, individually and as parent and natural guardian of A.W., currently resides at 418 Niagara Street, Colorado Springs, CO 80911 with minor child A.W. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Rebecca Wilson and A.W. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

146. Plaintiff Leona Hansen currently owns and resides at 418 Ponderosa Drive, Colorado Springs, CO 80911. As a result of Leona Hansen's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Leona Hansen has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

147. Plaintiff Thomas Hansen currently owns and resides at 418 Ponderosa Drive, Colorado Springs, CO 80911. As a result of Thomas Hansen's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Hansen has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

148. Plaintiff Shelly Fly currently owns and resides at 4204 Sandberg Drive, Colorado Springs, CO 80911. As a result of Shelly Fly's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Shelly Fly has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

149. Plaintiff Matthew Erickson, individually and as parent and natural guardian of U.E., resided at 422 Niagara Street, Colorado Springs, CO 80911 with minor child U.E. for all times relevant herein. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Matthew Erickson and U.E. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

150. Plaintiff Matthew Erickson, individually and as parent and natural guardian of C.E., resided at 422 Niagara Street, Colorado Springs, CO 80911 with minor child C.E. for all times relevant herein. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Matthew Erickson and C.E. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

151. Plaintiff Natalia Erickson, individually and as parent and natural guardian of J.H., resided at 422 Niagara Street, Colorado Springs, CO 80911 with minor child J.H. for all times relevant herein. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Natalia Erickson and J.H. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

152. Plaintiff Natalia Erickson resided at 422 Niagara Street, Colorado Springs, CO 80911 for all times relevant herein. As a result of Natalia Erickson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Natalia Erickson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

153. Plaintiff Matthew Erickson resided at 422 Nigra Street, Colorado Springs, CO 80911 for all times relevant herein. As a result of Matthew Erickson's exposure to elevated

levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Matthew Erickson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

154. Plaintiff Jessie Martin currently owns and resides at 425 Security Blvd, Colorado Springs, CO 80911. As a result of Jessie Martin's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jessie Martin has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

155. Plaintiff Ronald Wheeler currently owns and resides at 4260 Dye St, Colorado Springs, CO 80911. As a result of Ronald Wheeler's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ronald Wheeler has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

156. Plaintiff Willie Gibbons currently owns and resides at 429 Eudora St, Colorado Springs, CO 80911. As a result of Willie Gibbons's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Willie Gibbons has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

157. Plaintiff Randi Lucero currently owns and resides at 4290 Rollins St, Colorado Springs, CO 80911. As a result of Randi Lucero's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Randi Lucero has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

158. Plaintiff Julia Craig currently owns and resides at 43 Taos Cir, Fountain, CO 80817. As a result of Julia Craig's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Julia Craig has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

159. Plaintiff Frank Craig currently owns and resides at 43 Taos Cir, Fountain, CO

80817. As a result of Frank Craig's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Frank Craig has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

160. Plaintiff Linda Craig currently owns and resides at 43 Taos Circle, Fountain, CO 80817. As a result of Linda Craig's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Linda Craig has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

161. Plaintiff Donald Bowman, Jr. currently owns and resides at 433 Blossom Field Road, Fountain, CO 80817. As a result of Donald Bowman, Jr.'s exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Donald Bowman, Jr. has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

162. Plaintiff April Bowman currently owns and resides at 433 Blossom Field Road, Fountain, CO 80817. As a result of April Bowman's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, April Bowman has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

163. Plaintiff Michelle Romero currently owns and resides at 4379 Excursion Drive, Colorado Springs, CO 80911. As a result of Michelle Romero's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michelle Romero has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

164. Plaintiff Troy Romero currently owns and resides at 4379 Excursion Drive, Colorado Springs, CO 80911. As a result of Troy Romero's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Troy Romero has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

165. Plaintiff Caron VonSprecken currently owns and resides at 4412 Excursion Dr, Colorado Springs, CO 80911. As a result of Caron VonSprecken's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Caron VonSprecken has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

166. Plaintiff Ricky VonSprecken currently owns and resides at 4412 Excursion Drive, Colorado Springs, CO 80911. As a result of Ricky VonSprecken's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ricky VonSprecken has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

167. Plaintiff Laura Scott currently owns and resides at 4440 Morado Drive, Colorado Springs, CO 80911. As a result of Laura Scott's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Laura Scott has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

168. Plaintiff Avery Scott currently owns and resides at 4440 Morado Drive, Colorado Springs, CO 80911. As a result of Avery Scott's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Avery Scott has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

169. Plaintiff Debray Scott currently owns and resides at 4440 Murado Drive, Colorado Springs, CO 80911. As a result of Debray Scott's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Debray Scott has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

170. Plaintiff Cynthia Griffin currently owns and resides at 4457 Windmill Creek Way, Colorado Springs, CO 80911. As a result of Cynthia Griffin's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Cynthia Griffin has elevated levels of

PFOA, PFOS, and/or PFCs in plaintiff's blood.

171. Plaintiff Un Suk Dufrain currently owns and resides at 4490 Borden Drive, Colorado Springs, CO 80911. As a result of Un Suk Dufrain's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Un Suk Dufrain has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

172. Plaintiff Alexander Yu currently owns and resides at 4517 Songgien Cir., Colorado Springs, CO 80906. As a result of Alexander Yu's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Alexander Yu has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

173. Plaintiff Nicole Lorenzana, individually and as parent and natural guardian of N.W., currently resides at 4530 Settlement Way, Colorado Springs, CO 80925 with minor child N.W. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Nicole Lorenzana and N.W. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

174. Plaintiff Nicole Lorenzana currently owns and resides at 4530 Settlement Way, Colorado Springs, CO 80925. As a result of Nicole Lorenzana's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Nicole Lorenzana has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

175. Plaintiff Brittney Hamilton currently owns and resides at 4531 Excursion Drive, Colorado Springs, CO 80911. As a result of Brittney Hamilton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Brittney Hamilton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

176. Plaintiff Randall Hamilton currently owns and resides at 4531 Excursion Drive,

Colorado Springs, CO 80911. As a result of Randall Hamilton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Randall Hamilton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

177. Plaintiff Alejandro Franco currently owns and resides at 4555 Dancing Rain Way, Colorado Springs, CO 80911. As a result of Alejandro Franco's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Alejandro Franco has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

178. Plaintiff Dominick Anderson currently owns and resides at 4564 Excursion Drive, Colorado Springs, CO 80911. As a result of Dominick Anderson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dominick Anderson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

179. Plaintiff Nicole Anderson currently owns and resides at 4564 Excursion Drive, Colorado Springs, CO 80911. As a result of Nicole Anderson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Nicole Anderson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

180. Plaintiff Jacky Anderson currently owns and resides at 4564 Excursion Drive, Colorado Springs, CO 80911. As a result of Jacky Anderson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jacky Anderson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

181. Plaintiff Sylvia Smith, individually and as parent and natural guardian of T.G., currently resides at 4565 Hennings Dr., Security, CO 80911 with minor child T.G. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Sylvia Smith and T.G. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and

Sylvia Smith has been diagnosed with Ulcerative Colitis.

182. Plaintiff Marqual Lambert currently owns and resides at 4569 Horse Tooth Rd, Colorado Springs, CO 80911. As a result of Marqual Lambert's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marqual Lambert has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

183. Plaintiff Emari Lambert currently owns and resides at 4569 Horse Tooth Rd, Colorado Springs, CO 80911. As a result of Emari Lambert's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Emari Lambert has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

184. Plaintiff Arlene Lambert currently owns and resides at 4569 Horse Tooth Rd, Colorado Springs, CO 80911. As a result of Arlene Lambert's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Arlene Lambert has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

185. Plaintiff Antoine Lambert currently owns and resides at 4569 Horse Tooth Rd, Colorado Springs, CO 80911. As a result of Antoine Lambert's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Antoine Lambert has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

186. Plaintiff David Montoya currently owns and resides at 46 N Amherst Street, Colorado Springs, CO 80911. As a result of David Montoya's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, David Montoya has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

187. Plaintiff Ricky Tweed currently owns and resides at 46 North Dartmouth St, Widefield, CO 80911. As a result of Ricky Tweed's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Ricky Tweed has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

188. Plaintiff Dora Fernandez, individually and as parent and natural guardian of M.N., currently resides at 4634 Hennings Drive, Colorado Springs, CO 80911 with minor child M.N. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dora Fernandez and M.N. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

189. Plaintiff Candace Kurth currently owns and resides at 4639 Fencer Road, Colorado Springs, CO 80911. As a result of Candace Kurth's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Candace Kurth has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

190. Plaintiff Victoria Goodell currently owns and resides at 4648 Fencer Rd, Colorado Springs, CO 80911. As a result of Victoria Goodell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Victoria Goodell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

191. Plaintiff Michael Rotondo currently owns and resides at 4648 Fencer Road, Colorado Springs, CO 80911. As a result of Michael Rotondo's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michael Rotondo has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

192. Plaintiff Chris Pandolfi, individually and as parent and natural guardian of N.P., currently resides at 465 Cielo Vist St, Colorado Springs, CO 80911 with minor child N.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Pandolfi and N.P. have elevated levels of PFOA, PFOS, and/or PFCs in their

blood.

193. Plaintiff Chris Pandolfi, individually and as parent and natural guardian of A.P., currently resides at 465 Cielo Vista St, Colorado Springs, CO 80911 with minor child A.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Pandolfi and A.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

194. Plaintiff Chris Pandolfi, individually and as parent and natural guardian of J.P., currently resides at 465 Cielo Vista St, Colorado Springs, CO 80911 with minor child J.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Pandolfi and J.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

195. Plaintiff Chris Pandolfi, individually and as parent and natural guardian of C.P., currently resides at 465 Cielo Vista St, Colorado Springs, CO 80911 with minor child C.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Pandolfi and C.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

196. Plaintiff Chris Pandolfi, individually and as parent and natural guardian of P.P., currently resides at 465 Cielo Vista Street, Colorado Springs, CO 80911 with minor child P.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chris Pandolfi and P.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

197. Plaintiff Shanell Thompson, individually and as parent and natural guardian of A.T., currently resides at 4695 Cassidy St, Colorado Springs, CO 80911 with minor child A.T. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking

water supply, Shanell Thompson and A.T. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

198. Plaintiff Shanell Thompson currently owns and resides at 4695 Cassidy Street, Colorado Springs, CO 80911. As a result of Shanell Thompson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Shanell Thompson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

199. Plaintiff Amy Clements currently owns and resides at 470 Pucket Cir, Colorado Springs, CO 80911. As a result of Amy Clements's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Amy Clements has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

200. Plaintiff Tina Kieselstein currently owns and resides at 4724 Brant Road, Colorado Springs, CO 80911. As a result of Tina Kieselstein's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Tina Kieselstein has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

201. Plaintiff Jerome Depner, individually and as parent and natural guardian of I.D., currently resides at 4731 Expendition Drive, Colorado Springs, CO 80911 with minor child I.D. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jerome Depner and I.D. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

202. Plaintiff Christopher Varano, individually and as parent and natural guardian of D.V., currently resides at 4735 Cassidy Street, Colorado Springs, CO 80911 with minor child D.V. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christopher Varano and D.V. have elevated levels of PFOA, PFOS,

and/or PFCs in their blood.

203. Plaintiff Heather Varano currently owns and resides at 4735 Cassidy Street, Colorado Springs, CO 80911. As a result of Heather Varano's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Heather Varano has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

204. Plaintiff Christopher Varano currently owns and resides at 4735 Cassidy Street, Colorado Springs, CO 80911. As a result of Christopher Varano's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christopher Varano has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

205. Plaintiff Micahel Endres currently owns and resides at 475 Athens Drive, Colorado Springs, CO 80911. As a result of Micahel Endres's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Micahel Endres has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

206. Plaintiff Jennifer Osborn currently owns and resides at 4775 Cassidy Street, Colorado Springs, CO 80911. As a result of Jennifer Osborn's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jennifer Osborn has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

207. Plaintiff Glenda Lux currently owns and resides at 4808 Pathfinder Dr, Colorado Springs, CO 80911. As a result of Glenda Lux's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Glenda Lux has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

208. Plaintiff David Lux currently owns and resides at 4808 Pathfinder Drive, Colorado Springs, CO 80911. As a result of David Lux's exposure to elevated levels of PFOA,

PFOS, and/or PFCs in the drinking water supply, David Lux has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

209. Plaintiff Silvia Vigil currently owns and resides at 4815 Hunters Run, Colorado Springs, CO 80911. As a result of Silvia Vigil's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Silvia Vigil has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

210. Plaintiff Donald Vigil currently owns and resides at 4815 Hunters Run, Colorado Springs, CO 80911. As a result of Donald Vigil's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Donald Vigil has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

211. Plaintiff Julian Soliz, individually and as parent and natural guardian of L.S., currently resides at 4840 Hennings Drive, Colorado Springs, CO 80911 with minor child L.S. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Julian Soliz and L.S. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

212. Plaintiff Julian Soliz currently owns and resides at 4840 Hennings Drive, Colorado Springs, CO 80911. As a result of Julian Soliz's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Julian Soliz has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

213. Plaintiff Cathy Johnson currently owns and resides at 4847 Justeagen Dr., Colorado Springs, CO 80911. As a result of Cathy Johnson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Cathy Johnson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

214. Plaintiff Marjorie Tuggle currently owns and resides at 4862 Haiti Way, Colorado

Springs, CO 80911. As a result of Marjorie Tuggle's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marjorie Tuggle has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

215. Plaintiff James Tuggle currently owns and resides at 4862 Haiti Way, Colorado Springs, CO 80911. As a result of James Tuggle's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, James Tuggle has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

216. Plaintiff Cassandra Gordon currently owns and resides at 49 Watson Blvd, Colorado Springs, CO 80911. As a result of Cassandra Gordon's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Cassandra Gordon has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

217. Plaintiff Tommy Barter currently owns and resides at 49 Willis Drive, Colorado Springs, CO 80911. As a result of Tommy Barter's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Tommy Barter has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

218. Plaintiff Chong Frazier currently owns and resides at 4936 Daredevil Dr, Colorado Springs, CO 80911. As a result of Chong Frazier's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Chong Frazier has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

219. Plaintiff Timothy Scott currently owns and resides at 4956 Windwalker Drive, Colorado Springs, CO 80911. As a result of Timothy Scott's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Timothy Scott has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

220. Plaintiff Rowena Scott currently owns and resides at 4956 Windwalker Drive, Colorado Springs, CO 80911. As a result of Rowena Scott's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Rowena Scott has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

221. Plaintiff Martha Taylor currently owns and resides at 4960 Wilkin Dr, Colorado Springs, CO 80911. As a result of Martha Taylor's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Martha Taylor has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

222. Plaintiff Robert Christian currently owns and resides at 5 Las Piedras Escondidas, Colorado Springs, CO 80904. As a result of Robert Christian's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Christian has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

223. Plaintiff Daniel Hamilton currently owns and resides at 50 North Dartmouth St, Colorado Springs, CO 80911. As a result of Daniel Hamilton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Daniel Hamilton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

224. Plaintiff Eva Hamilton currently owns and resides at 50 North Dartmouth St, Colorado Springs, CO 80911. As a result of Eva Hamilton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Eva Hamilton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

225. Plaintiff Norma Van Buskirk currently owns and resides at 502 East Iowa Avenue, Fountain, CO 80817. As a result of Norma Van Buskirk's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Norma Van Buskirk has elevated levels

of PFOA, PFOS, and/or PFCs in plaintiff's blood.

226. Plaintiff Robert Croft currently owns and resides at 5023 Pathfinder Drive, Colorado Springs, CO 80911. As a result of Robert Croft's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Croft has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

227. Plaintiff Judy Campbell currently owns and resides at 503 Quebec Street, Colorado Springs, CO 80911. As a result of Judy Campbell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Judy Campbell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

228. Plaintiff Kevin Boyd currently owns and resides at 504 Syracuse Street, Colorado Springs, CO 80911. As a result of Kevin Boyd's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kevin Boyd has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

229. Plaintiff Christine Uebel currently owns and resides at 5066 Pathfinder Drive, Colorado Springs, CO 80911. As a result of Christine Uebel's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christine Uebel has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Thyroid Problems.

230. Plaintiff Christina Perez-Giordano, individually and as parent and natural guardian of A.G., currently resides at 5075 Hunters Run, Colorado Springs, CO 80911 with minor child A.G. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christina Perez-Giordano and A.G. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Christina Perez-Giordano has been diagnosed with

Pregnancy Problems; Ulcerative Colitis.

231. Plaintiff Christina Perez-Giordano, individually and as parent and natural guardian of R.G., currently resides at 5075 Hunters Run, Colorado Springs, CO 80911 with minor child R.G. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christina Perez-Giordano and R.G. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Christina Perez-Giordano has been diagnosed with Pregnancy Problems; Ulcerative Colitis.

232. Plaintiff Christina Perez-Giordano, individually and as parent and natural guardian of N.G., currently resides at 5075 Hunters Run, Colorado Springs, CO 80911 with minor child N.G. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christina Perez-Giordano and N.G. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Christina Perez-Giordano has been diagnosed with Pregnancy Problems; Ulcerative Colitis.

233. Plaintiff Jeremy Giordano currently owns and resides at 5075 Hunters Run, Colorado Springs, CO 80911. As a result of Jeremy Giordano's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jeremy Giordano has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

234. Plaintiff Shy-Anne Gramsch currently owns and resides at 508 Widefield Dr., Colorado Springs, CO 80911. As a result of Shy-Anne Gramsch's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Shy-Anne Gramsch has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

235. Plaintiff Robyn Palmer currently owns and resides at 5080 Marabou Way, Security, CO 80911. As a result of Robyn Palmer's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Robyn Palmer has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

236. Plaintiff Cheri Strahan currently owns and resides at 509 Quebec Pl, Colorado Springs, CO 80911. As a result of Cheri Strahan's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Cheri Strahan has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

237. Plaintiff Wilfred Berthiaume currently owns and resides at 510 Bickely St, Colorado Springs, CO 80911. As a result of Wilfred Berthiaume's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Wilfred Berthiaume has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

238. Plaintiff Eleonore Berthiaume currently owns and resides at 510 Bickley Street, Colorado Springs, CO 80911. As a result of Eleonore Berthiaume's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Eleonore Berthiaume has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

239. Plaintiff Heather Lindblad currently owns and resides at 510 Jersey Lane, Colorado Springs, CO 80911. As a result of Heather Lindblad's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Heather Lindblad has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

240. Plaintiff Raymond Phelps currently owns and resides at 510 Jersey Lane, Colorado Springs, CO 80911. As a result of Raymond Phelps's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Raymond Phelps has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

241. Plaintiff Heather Lindblad, individually and as parent and natural guardian of

C.P., currently resides at 510 Jersey Ln, Colorado Springs, CO 80911 with minor child C.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Heather Lindblad and C.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

242. Plaintiff Thomas Chisholm, individually and as parent and natural guardian of F.C., currently resides at 510 Leta Drive, Colorado Springs, CO 80911 with minor child F.C. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Chisholm and F.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

243. Plaintiff Thomas Chisholm, individually and as parent and natural guardian of B.C., currently resides at 510 Leta Drive, Security, CO 80911 with minor child B.C. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Chisholm and B.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

244. Plaintiff Thomas Chisholm, individually and as parent and natural guardian of N.C., currently resides at 510 Leta Drive, Colorado Springs, CO 80911 with minor child N.C. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Chisholm and N.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

245. Plaintiff Warren Pickerel currently owns and resides at 5106 Barnstormers Ave, Colorado Springs, CO 80911. As a result of Warren Pickerel's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Warren Pickerel has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

246. Plaintiff Kristie Valentino currently owns and resides at 5138 Alturas Circle,

Colorado Springs, CO 80911. As a result of Kristie Valentino's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kristie Valentino has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

247. Plaintiff Bryce Jaskar currently owns and resides at 516 Squire Street, Colorado Springs, CO 80911. As a result of Bryce Jaskar's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Bryce Jaskar has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

248. Plaintiff Skye Jaskar currently owns and resides at 516 Squire Street, Colorado Springs, CO 80911. As a result of Skye Jaskar's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Skye Jaskar has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

249. Plaintiff Providence Jaskar currently owns and resides at 516 Squire Street, Colorado Springs, CO 80911. As a result of Providence Jaskar's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Providence Jaskar has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

## **Defendants**

250. When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

251. The term "Defendant" or "Defendants" refers to all Defendants named herein

jointly and severally.

252. Upon information and belief, each of the Defendants are responsible, negligently, intentionally, and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants, or employees, or due to the ownership, maintenance, or control of the instrumentality causing them injury, or in some other actionable manner.

253. Defendant THE 3M COMPANY ("3M") is, upon information and belief, an American multinational corporation based in Maplewood, Minnesota and incorporated in Delaware. 3M was founded in 1902 as the Minnesota Mining and Manufacturing Company. With approximately $30 billion in annual net sales, 3M employs approximately 90,000 people, operates in approximately 70 countries, and produces more than 55,000 products. 3M does business throughout the United States, including in the state of Colorado.

254. 3M designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations.

255. 3M is engaged in substantial and not isolated activity in this State; all as more fully alleged herein.

256. Defendant TYCO FIRE PRODUCTS L.P., successor in interest to THE ANSUL COMPANY ("TYCO"), is a Delaware corporation having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143. TYCO manufactured and currently manufactures the ANSUL brand of products, including ANSUL brand AFFF.

257. Defendant TYCO was incorporated as a limited partnership on December 15, 2000. The name and mailing address of the sole general partner is Fire Products GP Holding,

Inc. Fire Products GP Holding, Inc., is a New Jersey corporation having its principal place of business at 9 Roszel Road, Princeton, NJ 08540.

258. Upon information and belief, Defendant TYCO is the successor in interest to the corporation formerly known as THE ANSUL COMPANY ("ANSUL"). This Complaint shall collectively refer to ANSUL and/or TYCO as the successor in interest to ANSUL as "TYCO/ANSUL." At all times relevant, TYCO/ANSUL designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations.

259. Defendant BUCKEYE FIRE EQUIPMENT COMPANY ("BUCKEYE") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

260. At all times relevant to the present litigation, BUCKEYE designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

261. Defendant CHEMGUARD is a Wisconsin corporation having its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

262. At all times relevant to the present litigation, CHEMGUARD designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

263. Defendant NATIONAL FOAM, INC. ("NATIONAL FOAM") is a Delaware corporation having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382. At all times relevant, NATIONAL FOAM designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

264. Defendant KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOAM, INC., f/k/a NATIONAL FOAM INC., is a Pennsylvania corporation having a principal place of business at 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615. At all times relevant, KIDDE FIRE FIGHTING, INC. designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

265. KIDDE FIRE FIGHTING, INC., is sued individually, and as successor in interest to NATIONAL FOAM, INC.

266. KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., is a Massachusetts corporation having a principal place of business at One Carrier Place, Farmington, Connecticut 06302. At all times relevant, KIDDE PLC, INC. designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

267. KIDDE PLC, INC., is sued individually, as a successor in interest to NATIONAL FOAM, INC.

268. Upon information and belief, WILLIAMS HOLDINGS, INC. was incorporated on October 10, 1987, and later dissolved on December 31, 1990. Upon information and belief, John F. Hannon was the CEO and Secretary of WILLIAMS HOLDINGS, INC. At all times relevant, WILLIAMS HOLDINGS, INC. designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

269. Upon information and belief, WILLIAMS CORPORATION was founded in 1997, and dissolved on October 26, 2000. Upon information and belief, John F. Hannon was the CEO of Williams Corporation, as well as the Treasurer of KIDDE FIRE FIGHTING, INC. prior to the dissolution of Williams Corporation.

270. Upon information and belief, WILLIAMS HOLDINGS, INC., a Delaware corporation, filed as a foreign corporation with the Massachusetts Secretary of State on June 2, 1987.

271. Upon information and belief, John F. Hannon changed the name of WILLIAMS HOLDINGS, INC. to WILLIAMS HOLDINGS US, INC., on February 12, 1998.

272. Upon information and belief, WILLIAMS HOLDINGS US, INC. became KIDDE PLC, INC. on November 15, 2000.

273. WILLIAMS HOLDINGS, INC. is named as successor in interest to NATIONAL FOAM, INC.

274. KIDDE-FENWAL, INC. is a Massachusetts corporation with its principal place of business at 400 Main Street, Ashland, Massachusetts 01721. At all times relevant, KIDDE-FENWAL, INC. designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

275. Upon information and belief, Fenwal, Inc. was incorporated on June 21, 1988, and later changed its name to KIDDE-FENWAL, INC.

276. Upon information and belief, the Canadian Intellectual Property Office has registered the NATIONAL FOAM trademark to KIDDE-FENWAL, INC., formerly registered to KIDDE FIRE FIGHTING, INC.

277. KIDDE-FENWAL, INC., is sued individually, and as successor in interest to NATIONAL FOAM, INC.

278. UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC., is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. At all times relevant, UTC FIRE &

SECURITY AMERICAS CORPORATION, INC. designed, manufactured and sold AFFF used for training operations and fighting fires including at PAFB.

279. Upon information and belief, KIDDE-FENWAL, INC. is part of the UTC CLIMATE CONTROL & SECURITY unit of United Technologies Corporation.

280. UTC FIRE & SECURITY AMERICAS CORPORATION, INC., is sued individually, and as successor in interest to NATIONAL FOAM, INC.

281. NATIONAL FOAM, INC.; KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOAM, INC., f/k/a NATIONAL FOAM INC., individually and as successor in interest to NATIONAL FOAM, INC.; KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., individually and as successor in interest to NATIONAL FOAM, INC.; KIDDE-FENWAL, INC., individually and as successor in interest to NATIONAL FOAM, INC.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC.; shall collectively be referred to herein as "NATIONAL FOAM."

282. At all times relevant to the present litigation, NATIONAL FOAM designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

**<u>FACTUAL ALLEGATIONS AS TO ALL COUNTS</u>**

283. AFFF is a Class-B fire-fighting foam that is mixed with water and used to extinguish fires that are difficult to fight, including those involving hydrocarbon fuels such as petroleum or other flammable liquids.

284. AFFF is synthetically formed by combining fluorine free hydrocarbon foaming agents with surfactants. When mixed with water, the resulting solution produces an aqueous film

that spreads across the surface of hydrocarbon fuel. This film provides fire extinguishment and is the source of the designation "aqueous film forming foam."

285. AFFF has the presence of fluorinated surfactants that lower the water's surface tension, essentially smothering the fire and starving it of its oxygen.

286. Some fluorinated surfactants have unique properties that cause some of the compounds to persist in the environment and toxically bioaccumulate in animals and humans.

287. AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and in many parts of the world.

288. Defendants 3M, TYCO/ANSUL, NATIONAL FOAM, CHEMGUARD and BUCKEYE designed, manufactured, and sold AFFF that was used at the PAFB.

289. The United States Navy first used AFFF in 1963, with the USAF commencing its use of AFFF in 1970.

290. In the foam industry, concentrates are typically referred to as "3%" or "6%" concentrate, depending on the mixture rate with water. AFFF concentrates contain about 60-90% water and have a fluorine content of about 0.3-1.8%.

291. The USAF uses 3% AFFF for its installations.

292. Fluorosurfactants used in 3M's AFFF were produced by a unique and patented process known as electrochemical fluorination ("ECF"). The ECF process resulted in a product that contains PFOS, some of which degrades into PFOA.

293. 3M was the only company to manufacture PFOS-containing AFFF.

294. In an attempt to limit liability, 3M opted to stop producing PFOS in 2002 because it was aware of the widespread contamination and the health effects on the American public associated with exposure to the contamination.

295. Like PFOS, PFOA is a man-made, manufactured chemical not found in nature. PFOA was used to make household and commercial products that resist heat and chemical reactions, and can be used to repel oil, stains, grease, and water.

296. In 1947, 3M began producing PFOA via ECF.

297. In 1951, 3M began selling its PFOA to other chemical companies, including DuPont.

298. Other companies, including Defendants TYCO/ANSUL, BUCKEYE, NATIONAL FOAM, and CHEMGUARD, began manufacturing AFFF using PFOA that they produced themselves or purchased from other companies. Defendants then sold AFFF to the USAF for use at installations across the nation, including PAFB.

299. The chemical structure of PFOA and PFOS make them resistant to breakdown or environmental degradation. As a result, they are persistent when released into the environment.

300. PFOA and PFOS have been found to bioaccumulate in humans and animals. In 2005, the United States Department of Health and Human Services found that "human exposure to PFOA and PFOS lead to the buildup of these chemicals in the body."

301. By the early 1960s, 3M knew that PFOS and PFOA were stable, persistent in the environment, and did not degrade.

302. As a result of this persistence, PFOA can remain in the environment, particularly in water, for many years and can move through air, soil, and into groundwater.

303. Early studies showed that PFCs accumulated in the human body and were toxic.

304. 3M studies from the 1970s concluded that PFCs were "even more toxic" than previously believed.

305. 3M knew that PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney, and liver.

306. Upon information and belief, by the 1970s, 3M knew that PFOA and PFOS were widely present in the blood of the general U.S. population. Upon information and belief, 3M concealed this knowledge from the public and government regulators, including those officials responsible for buying and supplying PAFB with AFFF.

307. In or about 1977, TYCO/ANSUL was also aware of the environmental and toxic effects of AFFF and studied whether it could develop an AFFF that produced less of an environmental impact.

308. Because of PFOA's toxicity, eight major PFOA manufacturers agreed in 2006 to participate in the USEPA's PFOA Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95% no later than 2010.

309. Human studies show associations between increased PFOA levels in blood and an increased risk of developing numerous serious medical conditions, including high cholesterol levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

310. These injuries can arise months or years after exposure to PFOA.

311. As alleged herein, the adverse health effects observed following exposure to PFOS are the same as those observed with PFOA, meaning injuries associated with PFOS exposure and accumulation similarly manifest themselves months or years after the initial exposure.

312. Given the extreme persistence of PFOS and PFOA in the environment, these chemicals' toxicity, mobility, and bioaccumulation potential has created an ongoing and concrete threat to the health of the residents in the Communities.

**AFFF Usage at Peterson Air Force Base and the Colorado Springs Municipal Airport.**

313. Upon information and belief, Defendants each manufactured AFFF containing PFCs for sale to the DOD or the USAF with knowledge that AFFF would be used in training operations and for emergency fire-fighting situations.

314. Upon information and belief, Defendants' AFFF products were sold to and used at PAFB.

315. At any given time, the Defendants were responsible for the design, manufacture, and sale of thousands of gallons of AFFF concentrate used and stored at PAFB.

316. The AFFF was expected to and did reach PAFB without substantial change in the condition in which the Defendants sold it.

317. For decades, USAF personnel used AFFF designed, manufactured, and sold by each of the Defendants for training operations at the PAFB, including fire-fighting and explosion training.

318. Due to these training operations, AFFF was released into the surrounding air, soil, and groundwater at locations including but not limited to the current fire training area ("FTA") (1991 to date), the former FTA known as Site 5 (1960 through 1977), and the former FTA known as Site 8 (1977 to 1991).

319. AFFF was additionally introduced into the groundwater via aircraft hangers containing fire suppression systems that used AFFF. During function testing or false alarms,

AFFF was permitted to enter the air, soil, and groundwater, further contaminating Plaintiffs' drinking water.

320. At PAFB, two fire stations conduct spray testing with AFFF, releasing AFFF into the soil, air, and groundwater.

321. In November 2016, the U.S. Army Corps of Engineers published "Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base," a report that confirmed the use of AFFF at PAFB and identified fire training areas at PAFB as possible sources of PFC contamination of the Communities' groundwater supply.

322. As a direct and proximate result of the failure to warn the USAF, PAFB, or the surrounding Communities, including those most sensitive to contamination, AFFF and its constituents were permitted to enter the air, soil, and groundwater, ultimately entering the Plaintiffs' bodies and properties.

323. Upon information and belief, instructions, warning labels, and material safety data sheets that Defendants provided with the AFFF did not reasonably nor adequately describe the health and environmental hazards of AFFF that Defendants knew or should have known.

**AFFF Containing PFOA and PFOS is Fungible and Commingled in the Groundwater**

324. Once AFFF containing PFOA and PFOS has been released into the environment, it lacks characteristics that would otherwise enable the identification of the company that manufactured that particular batch of AFFF.

325. Decades of manufacturing, selling, and distributing AFFF has created complex and opaque arrangements whereby Defendants regularly contract with multiple entities, including the DOD, the USAF, specific installations, and/or third-party logistic intermediaries, to sell and deliver AFFF to bases throughout the country, including to PAFB.

326. A subsurface plume, even if it comes from a single location, such as a retention pond or fire training area, originates from mixed batches of AFFF coming from different manufacturers.

327. At PAFB, AFFF from different manufacturers was used at multiple training sites over the course of many years, rendering it impossible for investigators to identify with any certainty the exact AFFF product that produced the PFOA or PFOS at issue.

328. Even if investigators could track the source of a subsurface plume to a single location at PAFB, it would be impossible to identify how an individual Defendants' AFFF contributed to the contamination because of how AFFF was used, stored, and disposed of at those locations.

329. The case at PAFB is typical of PFOA and PFOS contamination cases generally: even though several areas were located at PAFB where the AFFF was used and entered the groundwater, neither the federal or state investigators could determine which manufacturers' AFFF containing PFOA and PFOS had contributed to the resulting groundwater contamination plume.

330. PFOA and PFOS are present in all Defendants' AFFF products.

331. Because precise identification of the manufacturer of the specific AFFF that was the source of PFOA and PFOS found in a Plaintiff's blood and groundwater is impossible, and the market for AFFF is ascertainable, Plaintiffs must pursue all Defendants, jointly and severally, for those indivisible injuries which Defendants have collectively visited upon Plaintiffs.

332. Defendants are also jointly and severally liable because they conspired to conceal the true toxic nature of PFOA and PFOS, to profit from the use of AFFF containing PFOA and

PFOS, at Plaintiffs' expense, to contaminate Plaintiffs' drinking water supply, and to attempt to avoid liability for such contamination of the groundwater and poisoning of the Plaintiffs.

**MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, ENTERPRISE LIABILITY**

333. Upon information and belief, Defendants in this action are manufacturers that control a substantial share of the market for AFFF containing PFOA and PFOS in the United States and are jointly responsible for the contamination of the groundwater in the Communities and for causing the damages and injuries complained of in this Complaint.

334. Each of these Defendants participated in a state-wide and national market for AFFF containing PFOA and/or PFOS during the relevant time.

335. Market share liability attaches to all Defendants and the liability of each should be assigned according to each Defendant's percentage share of the market for AFFF-containing PFOA and/or PFOS at issue in this Complaint. As alleged in paragraphs 155-163, PFOA and PFOS is fungible; it is impossible to identify the exact Defendant who manufactured the particular AFFF containing PFOA and/or PFOS that has contaminated the air, soil or groundwater.

336. The relevant product and geographic market can be defined in this instance because the market for AFFF consists of only one buyer, PAFB via the USAF, who used this product for only one purpose, to fight fires.

337. The market for AFFF is ascertainable through standard discovery means.

338. It would be unfair to require Plaintiffs to bear the entire cost of their injuries simply because it is inherently impossible for the Plaintiffs to identify the exact Defendant that has manufactured the product that has contaminated the water supply and gives rise the injuries complained of in this action.

339. Alternatively, as a result of Defendants' participation in the fire-fighting foam industry through the production, sale, and distribution of AFFF containing PFOA and PFOS, enterprise liability attaches to all of the named Defendants for casting defective products into the stream of commerce.

## CONSPIRACY

340. Defendants actually knew of the health and environmental hazards which PFOA and PFOS posed to Plaintiffs.

341. Beginning in the 1970s and continuing through the date of this Complaint, Defendants formed joint task forces, committees and otherwise colluded for the avowed purpose of providing information about AFFF-containing PFOA and/or PFOS to the public and to government agencies with the unlawful purpose of:

342. Creating a market for AFFF-containing PFOA and/or PFOS despite knowledge of the hazards which PFOA and PFOS posed to the groundwater in Colorado and the residents who depend on such water;

343. Concealing the environmental properties and toxic nature of PFOA and PFOS, and its impact on Plaintiffs and the environment; and

344. Maximizing profits in a way Defendants knew or should have known would result in the contamination of Plaintiffs' drinking water.

345. Defendants carried out their conspiracy by one or more of the following overt acts or omissions:

346. Intentionally representing to the DOD, USAF, USEPA and the public that AFFF containing PFOA and PFOS was safe and did not pose an environmental or human health risk;

347. Concealing the dangers of PFOA and PFOS (including toxicological information on the dangers of the chemicals to living organisms, adverse fate and transport characteristics, and the propensity of PFOA and PFOS to contaminate groundwater) from the government and the public by, among other means, repeatedly requesting that information about the dangers and health effects of PFOA and PFOS be suppressed and not otherwise published, and by downplaying any adverse findings relating to PFOA and PFOS;

348. Concealing the dangers of AFFF containing PFOA and PFOS from end users, sensitive receptors, public water suppliers, and the users and consumers of groundwater;

349. Using their considerable resources to fight PFOA and PFOS regulation; and

350. Collectively deciding to use PFOA and/or PFOS rather than other, safer surfactants because AFFF-containing PFOA and/or PFOS were the most profitable surfactant for Defendants to use.

351. As a direct and proximate result of the Defendants' above described conspiracy, PFOA and PFOS, at all times relevant to this litigation has:

352. Posed and continues to pose a health threat to Plaintiffs because it has bioaccumulated in their bodies;

353. Created the need for testing and monitoring of Plaintiffs' health for known adverse health effects of PFOA and PFOS;

354. Contaminated Plaintiffs' property, soil, and groundwater, for those with private water wells;

355. Created the need for remediation of PFOA- and PFOS- contaminated groundwater for those property owners who utilize private water wells, or, where remediation of the

groundwater is impractical, installation of a system to filter out PFOA and PFOS or procurement of water from alternative sources; and

356. Diminished, and will continue to diminish, the values of Plaintiffs' properties due to past, actual, impending, or threatened contamination.

## CAUSES OF ACTION FOR INDIVIDUAL CLAIMS
## AS AND FOR A FIRST CAUSE OF ACTION: NEGLIGENCE

357. Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

358. This cause of action is brought pursuant to Colorado law.

359. Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to human health.

360. Given that Defendants were aware of these chemicals' potential for bioaccumulation in humans as well as the links to numerous serious medical conditions, including cancer, Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would be hazardous to human health.

361. Defendants knew or should have known that PFCs are highly soluble in water, highly mobile, extremely persistent in the environment, and therefore high likely to contaminate water supplies if released into the environment.

362. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would result in the contamination of the municipal and private well drinking water supplies of the Communities given their proximity to PAFB.

363. Defendants marketed and sold their products with knowledge that AFFF containing PFCs would be used in training exercises and in emergency fire-fighting situations, including at PAFB, in such a manner that these dangerous chemicals would be released into the environment.

364. Defendants marketed and sold their products with knowledge that AFFF containing toxic PFCs would be stored in fire suppressant systems and tanks on USAF Bases and at airports, including PAFB, and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the environment.

365. Knowing of the dangerous and hazardous properties of AFFF, and the manner in which AFFF would be used, stored, and maintained at PAFB, it was foreseeable that AFFF would contaminate the surrounding environment, groundwater, and drinking water supplies of Fountain, Security, and Widefield, as a result of the Communities' proximity to PAFB.

366. Defendants therefore knew or should have known that safety precautions would be required to prevent the release of PFOA and PFOS into the surrounding groundwater and drinking water supplies.

367. Given the foreseeability of AFFF's release into the surrounding Communities' drinking water, Defendants should have acted reasonably by not placing inherently dangerous AFFF into the marketplace.

368. Though AFFF is effective at extinguishing otherwise difficult to fight fires, the potential for widespread and persistent contamination of municipal and private well water supplies with chemicals linked to the development of numerous serious medical conditions far outweighs any social utility gained from AFFF's fire-fighting ability.

369. The magnitude of the burden on the Defendants to guard against this foreseeable harm to Plaintiffs was minimal, as the practical consequences of placing this burden on the Defendants amounted to providing adequate instructions, proper labeling, and sufficient warnings about their AFFF products.

370. As manufacturers, Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF products.

371. Considering the factors related to risk, foreseeability, social utility, the burden of guarding against the harm, and the practical consequences of placing that burden on the Defendants, the Defendants therefore owed multiple cognizable duties to Plaintiffs.

372. Defendants had a duty not to contaminate the Plaintiffs' municipal and private well drinking water supplies, as well as the surrounding environment and groundwater, with AFFF containing PFCs.

373. Defendants had a duty to warn of the hazards associated with AFFF containing PFCs entering and poisoning the environment and groundwater.

374. As manufacturers, marketers, and sellers of AFFF, Defendants owed Plaintiffs a duty to exercise reasonable care and ensure that AFFF was manufactured, marketed, and sold in such a way that the end users of AFFF were aware of the potential harm PFOA and PFOS could cause to human health and the environment.

375. Upon learning of the release of the contaminants, Defendants owed Plaintiffs a duty to warn and notify Plaintiffs of the release of the contaminants before they injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs and their property.

376. As such, the Defendants, acting negligently, recklessly, willfully, wantonly, and/or intentionally, breached their legal duties to Plaintiffs, causing the contamination of the municipal and private well drinking water supplies in and around the residences of Plaintiffs.

377. Defendants breached their duty to warn and notify end users of AFFF about the danger that PFOA and PFOS could enter into the environment and groundwater.

378. Defendants breached their duty to warn by failing to notify Plaintiffs in a timely manner that PFOA and PFOS had contaminated the municipal and private well drinking water supplies.

379. Defendants breached their duty not to contaminate the Plaintiffs' drinking water supplies by allowing PFOA and PFOS to be released into the municipal and private well drinking water supplies of Fountain, Security, and Widefield.

380. Defendants breached their duties to act reasonably by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

381. Defendants' breaches of their duties were direct and proximate causes of the drinking water in both the municipal and private well supplies to become contaminated with unsafe and dangerous levels of PFOA and PFOS.

382. Defendants' breaches of their duties were direct and proximate causes of the injuries, damages, and harm the Plaintiffs have suffered to their health and property.

383. Defendants' breach of their duty to act reasonably and timely notify and warn the Communities of the presence of PFOA and PFOS in the groundwater directly and proximately prevented Plaintiffs from undertaking effective and immediate remedial measures.

384. Plaintiffs have expended and/or will be required to expend significant financial resources to test and monitor for the presence of latent diseases for many years because of Defendants' conduct.

385. Plaintiffs have expended and/or will be required to expend significant financial resources to remediate the effects of Defendants' conduct on their homes and property for many years.

386. Plaintiffs suffered foreseeable injuries and damages as a proximate result of Defendants' breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle them to be protected against such actions or inactions.

387. Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence that are the natural and proximate result of Defendants conduct in an amount to be proved at trial.

## AS AND FOR A SECOND CAUSE OF ACTION: MEDICAL MONITORING

388. Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

389. This cause of action is brought pursuant to Colorado law.

390. In Colorado, a claim for medical monitoring requires a Plaintiff to establish that: (1) Plaintiff has suffered a significant exposure to a hazardous substance through the tortious actions of defendant; (2) as a proximate result of this exposure, Plaintiff suffers from an increased risk of contracting a serious latent disease; (3) that increased risk makes periodic diagnostic medical examinations reasonably necessary; and (4) monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

391. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would result in the contamination of the municipal and private well drinking water supplies of Fountain, Security, and Widefield, due to these communities' proximity to PAFB.

392. Defendants knew or should have known that exposing humans to PFC-contaminated water would be hazardous to human health and the environment.

393. Years of consuming PFC-contaminated water has exposed the Plaintiffs to PFOA, PFOS, and potentially other toxic substances as a result of the use, storage, and discharge of AFFF at PAFB.

394. As alleged in this Complaint, given the persistence and bioaccumulative nature of PFOA and PFOS, PFOA and PFOS exposure leads to the bioaccumulation of PFOA and PFOS in the blood of humans exposed to water contaminated with PFOA and PFOS.

395. Plaintiffs have suffered an injury due to the bioaccumulation of these hazardous substances in their blood.

396. Furthermore, individuals with elevated levels of PFOA and PFOS in their blood, such as the Plaintiffs, are at a seriously increased risk of contracting numerous medical conditions, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

397. Medical tests currently exist that can determine the level of PFOA and PFOS in the blood of an individual who has consumed PFOA- and PFOS- contaminated water.

398. Given that exposure to and bioaccumulation of elevated levels of PFOA and PFOS in an individual's blood significantly increases the risk of contracting a serious medical condition, periodic medical examinations are both reasonable and necessary to detect latent diseases.

399. A thorough medical monitoring plan, following common and accepted medical practices, can and should be developed for Plaintiffs to assist in the early detection and beneficial treatment of the diseases that can develop as a result of exposure to and bioaccumulation of PFOA and PFOS.

## AS AND FOR A THIRD CAUSE OF ACTION: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

400. Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

401. This cause of action is brought pursuant to Colorado law.

402. As commercial manufacturers, sellers, and distributors of AFFF, Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to human health and the environment.

403. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs was hazardous to human health and the environment.

404. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would result in the contamination of the Communities' municipal and private well water supplies as a result of the Communities' proximity to PAFB.

405. AFFF's persistence, mobility, bioaccumulative potential, and PFOA's and PFOS' links to numerous serious medical conditions, are not open and obvious conditions.

406. Though Defendants knew or should have known about the seriousness of the consequences of failing to warn about the inherent dangers associated with AFFF containing PFOA and PFOS, Defendants failed to warn PAFB of the dangers inherent in the use of the product.

407. Though Defendants knew or should have known about the reasonably foreseeable hazards to human health and welfare associated with the use of AFFF containing PFOA and PFOS in the vicinity of Plaintiffs' drinking water supplies, including contamination of public drinking water and private wells with PFOA and PFOS, Defendants failed to provide adequate warnings of, or take any precautionary measures to mitigate, those hazards.

408. Defendants failed to provide sufficient warning that the use and storage of Defendants' product would cause the product to be released into the environment and cause the PFOA and PFOS contamination of the environment, groundwater, and drinking water.

409. Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to Plaintiffs, and their properties.

410. Had Defendants provided adequate warnings, Plaintiffs could have taken measures to avoid or lessen their exposure.

411. Had Defendants provided adequate warnings, PAFB could have taken measures to reduce or prevent the release of PFOA and PFOS into the environment, groundwater, and drinking water.

412. Defendants' failure to provide adequate and sufficient warnings for the AFFF that they manufactured, marketed, and sold renders the AFFF a defective product.

413. Defendants' failure to warn was a direct and proximate cause of the environmental and health impacts from PFOA and PFOS that came from the use, storage and disposal of AFFF at PAFB.

414. Defendants' failure to warn was the direct and proximate result of the contamination, leading to the diminution in the value and marketability of the properties of the Plaintiffs. Plaintiffs have suffered the need for and the cost of remediation of their properties and mitigation systems for those properties, and the cost of alterative water.

415. As a result of the contamination, Plaintiffs have lost use and enjoyment of their properties and have suffered annoyance, discomfort, and inconvenience as a consequence of the contamination of their properties by Defendants.

416. As a result of Defendants' conduct and the resulting contamination, Plaintiffs have been injured in that their exposure to PFOA, PFOS, and potentially other toxic substances has produced an increased level of PFOA and PFOS in their blood stream, leading to the bioaccumulation of PFOA and PFOS in their bodies and significantly increasing their risk of developing numerous serious medical conditions.

417. As a result of Defendants manufacture, sale, or distribution of a defective product, Defendants are strictly liable in damages to Plaintiffs.

418. Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs.

**AS AND FOR A FOURTH CAUSE OF ACTION: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN**

419. Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

420. This cause of action is brought pursuant to Colorado law.

421. By virtue of manufacturing, marketing, and selling AFFF containing PFOA and PFOS, Defendants had a strict duty not to place an unreasonably dangerous product into the stream of commerce that would injure innocent bystanders in the Communities.

422. Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health when it, or products containing it, were used in their foreseeable and intended manner.

423. The chemical makeup of AFFF, PFOA, and PFOS underlying the product's hazardous characteristics involve the interpretation of technical, scientific information derived from research and testing.

424. Knowing of the dangerous and hazardous properties of AFFF due to research and testing, Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFOA or PFOS.

425. These alternative designs and/or formulations were already available, practical, and technologically feasible.

426. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to persons and property resulting from Defendants' manufacture, marketing, and sale of AFFF containing PFOA or PFOS.

427. As manufacturers of AFFF, Defendants not only had the ability to alter the product in such a way that maintained the fire-fighting abilities of the product while eliminating its inherently unsafe character, but also were in the best position to do so.

428. AFFF's persistence, mobility, bioaccumulative potential, and PFOA and PFOS' links to numerous serious medical conditions, are not open and obvious conditions or part of general public knowledge of AFFF.

429. Therefore, even though AFFF is useful for fighting hard to fight fires, the inherent risks associated with its use far outweigh any fire-fighting benefits, thereby rendering AFFF unreasonably dangerous.

430. The manufacture, sale, and distribution of unreasonably dangerous AFFF renders the Defendants' product defective.

431. Defendants' defective design and formulation of AFFF is the direct and proximate cause of the environmental and health impacts from PFOA and PFOS.

432. As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the value and marketability of the Plaintiffs' property has been and will continue to be diminished. Plaintiffs have suffered the need for and the cost of remediation of their properties and/or mitigation systems for those properties, and the cost of alterative water.

433. As a direct result of the contamination, Plaintiffs have lost the use and enjoyment of their properties and have suffered annoyance, discomfort, and inconvenience as a consequence of the contamination of their properties by Defendants.

434. As a direct result of Defendants' defective design and formulation of AFFF, the Plaintiffs have been injured in that their exposure to PFOA, PFOS, and potentially other toxic substances has caused them to develop numerous serious medical conditions associated with this exposure as more fully described herein and has significantly increased their risk of developing those conditions.

435. As a direct result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to the Plaintiffs.

436. Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs.

**CLAIM FOR PUNITIVE DAMAGES**

437. Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

438. Plaintiffs assert a claim for punitive damages under C.R.S. § 13-21-102.

439. Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that was done without regard to the consequences or the safety of the Plaintiffs and caused the foregoing property damage, and injuries upon the persons and properties of Plaintiffs, disregarding their protected rights.

440. Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure Plaintiffs in the Communities did not ingest PFOA and PFOS, which Defendants knew were linked to numerous serious medical conditions.

441. Defendants have caused significant harm to Plaintiffs, including harm to the properties and water supplies of Plaintiffs and have demonstrated a conscious and outrageous disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

442. WHEREFORE, the Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

443. a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs;

444. an award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages;

445. an order for an award of attorneys' fees and costs, as provided by law;

446. an award of pre-judgment and post-judgment interest as provided by law; and

447. an order for all such other relief the Court deems just and proper.

## JURY DEMAND

448. Plaintiffs demand a trial by jury of any and all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Dated: May 14, 2018

Respectfully Submitted,

**NAPOLI SHKOLNIK, PLLC**

*/s/ Hunter J. Shkolnik*___________
Hunter Shkolnik
Paul J. Napoli
Louise Caro

Tate J. Kunkle
Patrick J. Lanciotti
360 Lexington Avenue, Eleventh Floor
New York, NY 10017
Telephone: (212) 397-1000
E-mail: pnapoli@napolilaw.com
E-mail: hunter@napolilaw.com
E-mail: lcaro@napolilaw.com
E-mail: tkunkle@napolilaw.com
E-mail: planciotti@napolilaw.com

**MCDIVITT LAW FIRM**
Michael McDivitt
Kelly Hyman
19 East Cimarron Street
Colorado Springs, CO 80903
Telephone: (719) 471-3700
E-mail: mmcdivitt@mcdivittlaw.com
E-mail: kyman@mcdivittlaw.com